UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| John Drowns, | Case No. 2:23-cv-02066-CDS-NJK |
| Plaintiff | **Order Denying Defendant's Amended Motion for Summary Judgment** |
| v. | |
| GNLV, LLC, | [ECF No. 24] |
| Defendant | |

Plaintiff John Drowns brings this action for negligence seeking to recover for an injury he allegedly suffered while staying at GNLV, LLC's Golden Nugget hotel in Las Vegas, Nevada. *See* Compl., ECF No. 1-3. GNLV moves for summary judgment, arguing that Drowns has not proven that it was the cause of his injury or, in the alternative, seeking a finding that Drowns was comparatively negligent and/or failed to mitigate his damages. *See* Am. mot. for summ. j., ECF No. 24.[1] Because I find that, in the light most favorable to Drowns, there are genuine disputes of material fact as to the causation of his injury, and find that comparative negligence and mitigation of damages are questions for the jury, I deny all parts of the motion.

I.   **Background**

On June 15, 2023, Drowns cut his toe on tile in the shower while staying at GNLV's Golden Nugget hotel. ECF No. 1-3 at 4; Injury photos, Def.'s Ex. E, ECF No. 24-5 at 2–4. Shortly after the incident, Drowns called hotel security to his room. Drowns dep., Def.'s Ex. A, ECF No. 24-1 at 6. Drowns states that hotel security did not arrive for fifteen to twenty minutes, and when a person arrived, Drowns was cleaning the wound with soap and water. *Id.* Drowns describes cleaning it, putting pressure on it, and then placing an adhesive bandage from his own medical kit onto the wound. *Id.* at 7–8. He stated that, when washing it, the cut "stung a little,

---

[1] This motion is fully briefed. *See* Opp'n, ECF No. 25; Reply, ECF No. 28.

but that's about it." *Id.* at 7. Drowns confirmed that hotel security offered him medical care but did not offer to call a paramedic or get an ambulance, and he did not ask for any medical treatment because "[i]t looked like a small cut." *Id.* at 9–10. Drowns did not seek medical treatment for the injury that day. Drowns resps. to reqs. for admis., Def.'s Ex. B, ECF No. 24-2 at 4–5. Drowns had volunteered on an ambulance decades prior and told the security guard for the Golden Nugget immediately after [he] cut [his] toe that [he] had emergency medical service experience and [his] own first aid kit to treat [the] cut toe." ECF No. 24-1 at 8; *Id.* at 5. Drowns did not put antiseptic on the cut, stating that "after I bandaged it up, I didn't think about it" because "[i]t wasn't hurting." ECF No. 24-1 at 10–11. After bandaging his toe, Drowns left his hotel and went out "two or three house" either at the casino or "all over Fremont." *Id.* at 17. The following day, Drowns went "up and down the Strip" by bus and scooter for six to seven hours. *Id.* at 4.

Drowns did not seek medical treatment for his injured toe until June 17, 2023, when he began experiencing serious symptoms at the airport. ECF No. 24-2 at 4–5. At that point, the toe was infected with Streptococcus Dysgalactiae. Johnson dep., Def.'s Ex. C, ECF No. 24-3 at 20. The toe injury ultimately developed sepsis and required a nearly-two-week stay in the hospital. Dr. Wong decl., Pl.'s Ex. 2, ECF No. 25 at 17; ECF No. 24 at 1–2.

Drowns's medical expert, Dr. Elijah Johnson, stated in his deposition that he was critical of Drowns's choice to not put an antiseptic on the wound, specifically describing it as "a very common occurrence . . . . But . . . it's not an uncommon thing for these not to be taken seriously." *Id.* at 6. He also stated that, had Drowns called him the night of his injury, Dr. Johnson "would have recommended an antibiotic cream and probably put him on some Keflex antibiotic." *Id.* Dr. Johnson states that this also would have been the standard treatment had Drowns gone to the hospital earlier for his injury. *Id.* at 8. Dr. Johnson also testified that if Drowns had gone to the hospital by noon the day after the injury, "[i]t is more likely than not" that Drowns "would not have had . . . the sepsis." *Id.* at 9. Dr. Johnson could not name the source of the infection but

testified that Drowns's activities like putting on socks and walking in shoes could have dirtied the wound and increased the chance of infection, even with an adhesive bandage. *Id.* at 10–11. Drowns is diagnosed with several health conditions including diabetes, circulation problems, and obesity. Wong decl., ECF No. 25 at 18.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## III. Discussion

### A. Causation

In the motion for summary judgment, GNLV argues that Drowns's claim fails as a matter of law because he has not raised a genuine dispute of material fact as to the proximate cause of his infection. ECF No. 24 at 9–12. GNLV acknowledges that, viewing the facts in the light most favorable to Drowns, he cut his foot on the tile in the shower of the Golden Nugget. *Id.* at 9.

However, "the cut itself did not cause Plaintiff pain or suffering" because (1) Drowns did not experience serious pain when he cut his foot, and (2) Dr. Johnson testified that the cause of his two-week hospital stay was the Streptococcus Dysgalactiae bacterial infection and the fact that Drowns did not seek immediate treatment for the wound, not the cut itself. *Id.* at 9–10. GNLV further argues that Drowns has produced no evidence to explain where the bacteria originated and "it would be pure speculation to argue GNLV or its property was the source." *Id.* at 10. GNLV points to *Van Cleave v. Kietz-Mill Minit Mart*, a case in which the Supreme Court of Nevada stated:

> For an act to be the proximate cause of an injury, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Crosman v. Southern Pacific Co.*, 42 Nev. 92, 108–09, 173 P. 223, 228 (1918), quoting *Milwaukee, etc. Railway v. Kellogg*, 94 U.S. 469, 475, 24 L. Ed. 256 (1876). "Whenever a new cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action." *Konig v. N.-C.-O. Ry.*, 36 Nev. 181, 214–15, 135 P. 141, 153 (1913).

*Id.* at 11 (quoting 633 P.2d 1220, 1221 (Nev. 1981)). Thus, GNLV insists that the infection and the failure to treat the wound represented proximate causes of the injuries, and

> GNLV's employees could not have foreseen that Plaintiff, who claimed to have paramedic experience, had his own medical bag, stated he did not need assistance from GNLV's employee with an EMT bag, and did not request medical assistance, would: ignore common sense by not putting antiseptic or antibiotic ointment on his cut while knowing it prevented infection and had previously had such applied to cuts; not request antiseptic from GNLV employees it if he did not have some or go purchase it; or fail to seek medical treatment sooner, despite recognizing redness around the cut the very night of the incident and knowing it could meaning an aggravated wound or infection; and knowing his own underlying health conditions.

*Id.* at 12.

4

In response, despite it being patently clear that GNLV was challenging the causation element of the negligence claim, Drowns inexplicably asserts—repeatedly—that GNLV's argument was premised on comparative fault, but what it *meant* to argue was causation. *See* ECF No. 25 at 3 ("Defendant's argument is not an argument of comparative fault, but rather an argument regarding causation."); ECF No. 25 at 5 ("Defendant's Motion Is Not Assessing Comparative Fault, But Rather Causation[.]"). Drowns overcomes this confounding assertion by arguing that competent evidence, when viewed in the light most favorable to Drowns, supports that the alleged damages was proximately caused by GNLV. ECF No. 25 at 7. He points to an attached declaration by Dr. Johnson stating that "Drowns developed [the] infection due to the open wound on his toe, allowing this bacteria to infect him." Dr. Johnson decl., ECF No. 25 at 15.[2] The causal link, he explains, is that the incident resulted in wound, which "allowed bacteria which normally resides on the skin to enter into his body and to cause the infection which required a hospitalization." ECF No. 25 at 7; *see also id.*[3] In its reply, GNLV objects to the inclusion of Dr. Johnson's declaration, first introduced in response to the motion for summary judgment. ECF No. 28 at 4. It states that Dr. Johnson, when previously asked in his deposition whether his report contained a summary of all his opinions, Dr. Johnson replied, "Yes." *Id.* (quoting Def.'s Ex. G, ECF No. 28-2 at 5).

---

[2] I note that Drowns's response brief does not comply with the local rules of this district. *See* ECF No. 25. For example, "[d]ocuments filed electronically must be filed in a searchable . . . PDF" file, not merely scanned. L.R. IA 10-1(b); *see also* L.R. IC 2-2(a)(1). Additionally, "[e]xhibits and attachments must not be filed as part of the base document in the electronic filing system. They must be attached as separate files." L.R. IC 2-2(a)(3)(A). And "[a]n index of exhibits must be provided." L.R. IA 10-3(d). These and the other local rules exist to streamline court processes and preserve court resources, so I direct Drowns to follow them in the future in this case and any other litigation in this district. Failure to do so may result in the striking of future submissions, or other sanctions.

[3] Drowns then argues that the alleged breach of the duty of care was a "substantial factor" in the ultimate injury. ECF No. 25 at 7 (citing *Wyeth v. Rowatt*, 244 P.3d 765 (Nev. 2010)). I note here that the "substantial factor" test discussed in *Wyeth* relates to but-for causation, not proximate causation, and therefore I do not find this argument useful to my analysis. *See Wyeth*, 244 P.3d at 777–78, n.8 (discussing how a "substantial-factor" jury instruction may supplant a "but-for" jury instruction in a non-negligence context and in a footnote leaving "open the issue of whether the substantial-factor instruction applies in negligence cases," but not addressing proximate cause).

I start by acknowledging that although Dr. Johnson's declaration was only introduced in response to the motion, I will still consider its content. At the motion for summary judgment stage, I am to consider the factual record in the light most favorable to the non-moving party. *Kaiser Cement Corp.*, 793 F.2d at 1103. GNLV asks that I overlook this document because it was filed at an opportune time and conflicts with the witness's prior statements. Although fair objections, they are fodder for cross-examination and do not guide my summary judgment analysis.

Even without Dr. Johnson's declaration, however, I find that summary judgment is not warranted at this juncture because there are material facts in dispute. In Nevada, proximate cause is defined as "'any cause which in natural [foreseeable] and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred.'" *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980) (quoting *Mahan v. Hafen*, 351 P.2d 617 (Nev. 1960)). "There may be more than one proximate cause of an injury." *Banks ex rel. Banks v. Sunrise Hosp.*, 102 P.3d 52, 65 (Nev. 2004) (citation omitted).

Here, although Drowns's argument is lackluster, I find that the alleged breach of the duty of care—the sharp tile in the Golden Nugget shower—could still be found to be a proximate cause of the injury. The facts of this case can be compared to *Hammerstein v. Jean Dev. W.*, and the Supreme Court of Nevada's analysis is instructive. 907 P.2d 975 (Nev. 1995). *Hammerstein* involved the appeal of an order granting summary judgment against the plaintiff, a seventy-year-old man injured while staying on the fourth floor of a Nevada hotel. *Id.* at 976. A false fire alarm shut off the elevators, and the plaintiff was forced to walk down the stairs, which he alleged were "steep and metal." *Id.* On his way down, the plaintiff slipped off a stair and twisted his ankle. *Id.* As a result of climbing down the stairs, the plaintiff noticed swelling in his ankle and a small blister on his heel. *Id.* In the next few days, the plaintiff did not medically address the blister and it burst, later developing into an infected foot ulcer and eventually into a gangrenous infection. *Id.* The Supreme Court of Nevada ultimately reversed the grant of summary judgment,

finding that there was a triable fact as to whether the foot infection was a foreseeable result of the malfunctioning fire alarm system. *Id.* at 978. As it explained,

> [i]t should have been foreseeable to [the hotel] that if its fire alarm system was unreasonably faulty, harm to a certain type of plaintiff, i.e., one of its guests, could result. Also, this particular variety of harm, injuring an ankle or foot on the way down a stairwell, is a foreseeable variety of harm in this circumstance. The extent of the infection on Hammerstein's leg may not have been foreseeable, but the underlying injury should have been.

*Id.*

If a faulty fire alarm system can be the proximate cause of a foot infection, then it is without question that a foot infection can be the foreseeable result of a hotel breaching its duty of care by leaving sharp tile edges in its showers. GNLV paints Drowns's alleged failure to adequately tend to the injury as an intervening proximate cause, and this argument can definitely find purchase in the factual record. However, viewing the facts in the light most favorable to Drowns, this is ultimately a question of fact that must be left to the jury. Additionally, Drowns's failure to identify the exact point at which he was exposed to the bacteria is not fatal to his case, either. Although Dr. Johnson states in his declaration that the infection "is a result of bacteria that reside on the skin," ECF No. 25 at 15, even if this were not in the record, cases like *Hammerstein* illustrate that the source of the bacteria is not necessarily a crucial element of deducing proximate cause involving infected injuries. The mere existence of an open wound—infected later by common bacteria—alleged to have been caused by the defendant's breach of the duty of care, is enough to satisfy the proximate cause element of the negligence claim for purposes of summary judgment.

### B. Comparative negligence[4]

In the alternative of its summary judgment motion, GNLV requests that I find, as a matter of law, that Drowns was comparatively negligent for failing to seek prompt medical care for his cut. ECF No. 24 at 12–15.[5]

"Comparative negligence 'is conduct on the part of the plaintiff [that] falls below the standard to which [they] should conform for [their] own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm.'" *Cox v. Copperfield*, 507 P.3d 1216, 1228 (Nev. 2022) (quoting Restatement (Second) of Torts § 463 (Am Law. Ins. 1965)). It is an affirmative defense, in which the defendant must prove: (1) the plaintiff was negligent, and (2) the plaintiff's negligence was a substantial factor in causing his harm. *See Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 546 (Nev. 2005) (citing Restatement (Second) of Torts § 465(1) (Am. Law. Ins. 1965)).

Nevada is a modified comparative negligence state: the comparative negligence of the plaintiff will not bar the plaintiff's recovery if the plaintiff's negligence was not greater than the negligence of the defendant. Nev. Rev. Stat. § 41.141(1). If a jury decides the plaintiff is entitled to recover damages (i.e., the plaintiff's negligence was not greater than the defendant's), then the jury shall return a general verdict form with the total amount of damages regardless of the plaintiff's comparative negligence and a special verdict form that sets forth the percentage of negligence attributable to each side. Nev. Rev. Stat. § 41.141(2)(b)(1)–(2).

---

[4] This motion requests summary judgment, and separately requests findings as a matter of law of comparative negligence and failure to mitigate damages. ECF No. 24. Defendant is reminded that requesting multiple forms of relief in one motion is a violation of Local Rule IC 2-2(b) which states that for "each type of relief requested or purpose of the document, a separate even must be selected for that document." These and the other local rules exist to streamline court processes and preserve court resources, so I direct GNLV to follow them in the future in this case and any other litigation in this district. Failure to do so may result in the striking of future submissions, or other sanctions.

[5] GNLV states that it asserted a comparative negligence affirmative defense in its answer, filed on November 22, 2023, and "on file with the court." ECF No. 24 at 12. However, the answer was filed prior to removal—which took place on December 14, 2023, and is not attached to the removal paperwork or any subsequent filing. *See* ECF No. 1. Because Drowns does not contest that this affirmative defense was raised, the court will assume that the truth of what GNLV asserts. However, GNLV is directed to file its answer as a docket entry within ten days of the docketing of this order.

Generally, weighing the parties' comparative negligence is a question of fact for the jury. *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 802 (Nev. 1992). "A party's negligence becomes a question of law only when the evidence will support no other inference." *Id.* at 801 (quotation omitted). In particular, the Supreme Court of Nevada has held that sometimes a plaintiff "may be justified in not watching each of his steps" and in those cases the reasonableness of the plaintiff's behavior is properly determined by the jury. *Id.* at 802 (citing *Wagon Wheel Saloon & Gambling Hall, Inc. v. Mavrogan*, 369 P.2d 688, 690 (Nev. 1962)).

GNLV argues that as a matter of law, Drowns proximately contributed to the cause of his injuries by failing to protect against infection and failing to promptly seek medical treatment for the injury. *Id.* at 12. It points to the fact that Drowns did not request any treatment from Golden Nugget staff members, that he did not put any antiseptic ointment onto the injury, and that Dr. Johnson testified that seeking immediate medical attention "more likely than not" could have prevented his sepsis. *Id.* at 14 (citing ECF No. 24-3 at 9).

In response, Drowns begins with another perplexing assertion, declaring that "Defendant's argument regarding a finding of comparative fault is misplaced for the same reason that its comparative fault argument is misplaced . . . ." ECF No. 25 at 10. However, from there his arguments are cogent. He cites several cases supporting the proposition that comparative negligence must be left to the jury. *Id.* (discussing *PHWLV, LLC. v. House of CB USA, LLC*, 554 P.3d 715 (Nev. 2024) and *Sims v. Gen. Tel. & Elec.*, 815 P.2d 151, 157–58 (Nev. 1991)). Drowns points to deposition testimony from Dr. Johnson that it is very common for a layperson not to apply antibiotics on a wound like this one. *Id.* at 8 (citing Johnson dep., ECF No. 25 at 25). Further, Drowns argues that his washing the wound with soap and water represented a reasonable attempt to clean it and prevent infection. *Id.* at 9.

In its reply, GNLV argues that although comparative negligence is typically a factual issue, "it becomes a question of law only when the evidence is of such a character as to support no other legitimate inference." ECF No. 28 at 6 (quoting *Wagon Wheel*, 369 P.2d at 689–90 and

9

citing *Cox*, 507 P.3d at 1228). Further, it argues that "just because it is common for people to fail to act does not mean it is reasonable." *Id.* (citing *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 857 (9th Cir. 2001)).

A finding as a matter of law that Drowns was comparatively negligent is inappropriate at this time. Although, as GNLV argues, rare circumstances can lead to the conclusion, as a matter of law, that the plaintiff was comparatively negligent, this is not one such circumstance. As was explained in *Cox*, comparative negligence is an issue "of fact; it becomes a question of law only when the evidence is of such a character as to support no other legitimate inference." *Cox*, 507 P.3d at 1228 (quoting *Wagon Wheel*, 369 P.2d at 689–90). In *Wagon Wheel*, the Nevada Supreme Court determined that it was a question for the jury when the plaintiff slipped and fell on the stairs when he was not looking. 369 P.2d at 689–90; *see also Cox*, 507 P.3d at 1229 (likewise finding that the evidence presented was properly submitted to the jury instead of being decided as a matter of law). The only other case GNLV cites is *Murphy v. Southern Pacific Company*, a 1909 case in which the Nevada Supreme Court discussed a proto-comparative negligence instruction given to jurors and declared that "[t]he court, we believe, very fairly instructed the jury, and protected the interests of the defendant[.]" 101 P. 322, 327 (Nev. 1909). It is telling that even in support of its own motion, GNLV points to comparative-negligence-as-a-matter-of-law rule statements but not one example of its application.

Here, there is evidence from which a jury could conclude that Drowns was not comparatively negligent. This is not a case where the plaintiff admits to seeking out and intentionally exposing his toe to as many pathogens as he could. By contrast, based on the facts he presents, he washed it with soap and water and wrapped it with an adhesive bandage to prevent infection. ECF No. 24-1 at 6–8. Certainly, GNLV is welcome to argue that Drowns acted unreasonably by failing to adequately clean his toe, failing to apply an antiseptic, failing to seek medical treatment, placing his toe in a sock and shoe, and walking around for hours on end the day after the injury. It is also welcome to argue that Drowns had specialized knowledge as a

10

former ambulance volunteer and someone who had allegedly previously used antiseptic on wounds. However, this evidence is not so substantial as to justify taking this question out of the hands of the jury. Therefore, I deny GNLV's motion to the extent it seeks a finding as a matter of law that Drowns was comparatively negligent.

### C. Failure to mitigate damages

GNLV's final request for relief is that I find that, as a matter of law, Drowns failed to mitigate his damages. ECF No. 24 at 15–16.

In Nevada, a plaintiff has a duty to mitigate damages and "an injured person cannot recover for damages which could have been avoided by the exercise of reasonable care." *Automatic Merchandisers, Inc. v. Ward*, 646 P.2d 553, 554 (Nev. 1982). The burden of proving a failure to mitigate is on the party whose conduct is alleged to have caused the injury. *See Silver v. State Disposal Co. v. Shelley*, 774 P.2d 1044, 1046 (Nev. 1989).

GNLV essentially restates its argument about comparative negligence, asserting that Drowns failed to reasonably treat his injury and, had he taken reasonable measures, the infection would not have spread. ECF No. 24 at 15–16.[6] In response, Drowns points to similar facts, emphasizing, too, that Dr. Johnson testified "antibiotics aren't always the . . . cure. . . . [I]f it can drain adequately, you don't necessarily need antibiotics." ECF No. 25 at 9 (quoting Johnson dep., ECF No. 25 at 23). In its reply, GNLV reiterates that just because it is common not to seek treatment for such cuts does not make it reasonable, an element Drowns fails to adequately address. ECF No. 28 at 5. Further, it argues that because Drowns knew "of his own health

---

[6] GNLV cites to two cases seemingly for the proposition that this court can, as a matter of law, determine that Drowns failed to mitigate his damages. *See* ECF No. 24 at 16. The first is a Supreme Court of Nevada opinion from 1932. *See Carter v. City of Fallon*, 11 P.2d 817 (Nev. 1932). In it, addressing a motion for a new trial because the court failed to "find plaintiff guilty of *contributory negligence* as a matter of law," the Nevada Supreme Court concluded that the "issue of negligence and contributory negligence having been properly presented to the jury in the first instance . . . ." *Id.* at 819 (emphasis added). The other case is from 1955. *See Gordon v. Cal-Neva Lodge*, 291 P.2d 1054 (Nev. 1955). And again, addressing a *contributory negligence* as a matter of law argument, the Supreme Court of Nevada declared that "the question remains one of fact . . . ." *Id.* at 1056. Thus, not only do these cases not even address mitigation of damages, but they both concluded that the issues raised were factual questions for the jury.

conditions (diabetes, circulation problems, obesity, etc.) and the risks they pose, his past experience as a volunteer on an ambulance, and the basic measures he could have taken to avoid an infection, no reasonable jury could find Plaintiff did not fail to mitigate his damages." *Id.* at 5–6.[7]

As described fulsomely in the footnotes, GNLV's cited authority does not provide me with clear parameters as to what a defendant must demonstrate to have a court find, at summary judgment, that the plaintiff failed to mitigate its damages. However, even if it were a relatively low burden, for the same reasons I find that the issue of comparative negligence should be left to the jury, I find that the failure to mitigate damages question remains a question of fact. Drowns has presented competent evidence that his actions—washing his toe with soap and water, putting an adhesive bandage on it, and not seeking serious medical attention for a small cut that barely hurt—were reasonable. GNLV's challenges to this evidence are factual disputes for the trier of fact to determine. Therefore, I deny GNLV's motion to the extent it seeks a finding as a matter of law that Drowns was failed to mitigate his damages.

## IV.     Conclusion

IT IS THEREFORE ORDERED that GNLV's motion for summary judgement **[ECF No. 24] is DENIED.**

IT IS FURTHER ORDERED that GNLV's request that I find as a matter of law that Drowns was comparatively negligent **is DENIED.**

IT IS FURTHER ORDERED that GNLV's request that I find as a matter of law that Drowns failed to mitigate his damages **is DENIED.**

---

[7] GNLV cites another case in its reply, purportedly for the proposition that a plaintiff can fail to mitigate damages as a matter of law. ECF No. 28 at 6 (citing *Conner v. S. Nev. Paving, Inc.*, 741 P.2d 800, 801 (Nev. 1987)). Unlike *Carter* and *Gordon*, this case actually addresses failure to mitigate damages—though in the contract context—but, again, the Nevada Supreme Court concluded that this was ultimately a question for the jury. *Conner*, 741 P.2d at 801. Thus, of the six cases that GNLV points to that purportedly demonstrate that it has the right to a finding, as a matter of law, that Drowns was comparatively negligent or failed to mitigate his damages, *all six* stand for the proposition that, in almost any context, these are questions to be left to the trier of fact.

IT IS FURTHER ORDERED that GNLV is directed file its answer to the complaint (ECF No. 1-3) as a separate docket entry by July 24, 2025.

Dated: July 14, 2025

_____
Cristina D. Silva
United States District Judge